# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

|  |  |
|---|---|
| CITY OF JACKSONVILLE, FLORIDA and JEA, | |
| Plaintiffs, | |
| v. | Case No.:   3:18-cv-01174-BDJ-JRK |
| MUNICIPAL ELECTRIC AUTHORITY OF GEORGIA, | |
| Defendant. | |

## DEFENDANT MEAG'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF JEA'S MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP AS MEAG'S COUNSEL

ORRICK, HERRINGTON & SUTCLIFFE LLP
J. Peter Coll, Jr. (*pro hac vice*)
John Ansbro (*pro hac vice* admission pending)
51 West 52nd Street
New York, New York 10019
Tel: (212) 506-5000
Fax: (212) 506-5151
pcoll@orrick.com
jansbro@orrick.com

*Counsel for Defendant Municipal Electric Authority of Georgia*

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ................................................................. 1

II.     PERTINENT FACTS ............................................................................ 3

        A.      Orrick Has Represented MEAG on Plant Vogtle for Over Ten Years With
                JEA's Full Knowledge and Without Objection ................................... 3

                1.      October 2007 – May 2008: Orrick Represents MEAG in Arms-
                        Length Negotiations Across the Table from JEA, Who Is
                        Represented by Its Own Counsel ............................................ 3

                2.      April 2009 – September 2015: Orrick Represents MEAG in
                        Successive Rounds of Vogtle Financings With No Objection from
                        JEA ............................................................................. 5

                3.      2009, 2010, and 2014: Orrick Represents MEAG Across the Table
                        from JEA in Negotiating Three Amendments to the PPA, Still
                        With No Objection from JEA .................................................. 5

        B.      Orrick's Work for JEA Was Entirely Unrelated to the PPA ................. 5

        C.      In November 2008, JEA Asked Orrick to Review For Form And Factual
                Accuracy a Draft Bond Validation Pleading Prepared by MEAG's Other
                Counsel, Alston & Bird ............................................................. 6

        D.      In 2017, Due to Increased Costs, JEA Seeks A Way Out of the Project by
                Disavowing That It Ever Had Authority to Execute the PPA in the First
                Place, and Includes Orrick on Prelitigation Notices to MEAG ............ 7

        E.      September 2018: Litigation Ensues, and for the First Time in Over 10
                Years, JEA Objects to Orrick's Representation of MEAG ................... 8

III.    LEGAL STANDARD ........................................................................... 9

IV.     JEA FAILES TO ESTABLISH ANY VIOLATION OF FRPC 4-1.9 ............... 9

        A.      Orrick's Prior Representation of JEA Does Not Bear Any Substantial
                Relation to the Issues Relevant in this Litigation ........................... 10

        B.      The "Appearance of Impropriety" Standard Is Inapplicable, Although JEA
                Cannot Satisfy it in Any Event .................................................. 14

V.      EVEN ASSUMING, *ARGUENDO*, AN FRCP VIOLATION OCCURRED
        (WHICH IT DID NOT), DISQUALIFICATION WOULD NOT BE
        WARRANTED ................................................................................. 16

        A.      JEA Fails to Even Address Florida's Multi-Factor Test Required for
                Disqualification, Which Counsels Against that Drastic Result ............ 16

        B.      JEA's Knowing, Decade-Long Failure to Object to Orrick's
                Representation of MEAG Constitutes a Waiver of Any Objection by JEA ........ 18

VI.     CONCLUSION ................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

Atmos Nation., LLC v. Glow Indus., Inc.,
    2017 WL 5126055 (S.D. Fla. Apr. 7, 2017) ........................................................18

In re BellSouth Corp.,
    334 F.3d 941 (11th Cir. 2003) ...........................................................................9

Brown v. Blue Cross & Blue Shield of Fla., Inc.,
    2011 WL 11532078 (S.D. Fla. Aug. 8, 2011)........................................................2

Chem. Waste Mgmt., Inc. v. Sims,
    875 F. Supp. 501 (N.D. Ill. 1995) .....................................................................19

Concerned Parents of Jordan Park v. Hous. Auth. of City of St. Petersburg, Fla.,
    934 F. Supp. 406 (M.D. Fla. 1996)........................................................12, 15, 19

Cox v. Am. Cast Iron Pipe Co.,
    847 F.2d 725 (11th Cir. 1988) ..........................................................................10

Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    646 F.2d 1020 (5th Cir. 1981) ......................................................................10, 11

Gamestreamer, Inc. v. Roberts,
    2010 WL 11507869 (M.D. Fla. 2010) ................................................................15

Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.,
    2008 WL 1994857 (S.D.Fla. May 6, 2008) ......................................................9, 16

Gross v. SES Americom, Inc.,
    307 F. Supp. 2d 719 (D. Md. 2004)...................................................................19

Hamilton Grp. Funding, Inc. v. Basel,
    2018 WL 3546242 (S.D. Fla. July 24, 2018)..........................................................2

Hernandez v. Royal Carribean Cruises, Ltd.,
    2010 WL 3522210 (S.D. Fla. Sept. 7, 2010) .........................................................9

Herrmann v. GutterGuard, Inc.,
    199 Fed. Appx. 745 (11th Cir. 2006).................................................................9

Humphreys v. Ferrero,
    2008 WL 11331971 (S.D. Fla. Oct. 21, 2008).......................................................13

In re Jet 1 Center, Inc.,
    310 B.R. 649 (Bankr. M.D. Fla. 2004) ...............................................................19

Lane v. Safarti,
    676 So. 2d 475 (Fla. 3d DCA 1996) ...................................................................14

Law v. OOO RM Invest.,
    2016 WL 11348826 (S.D. Fla. Dec. 16, 2016) ........................................................9

Mitchell v. Hunt,
    2017 WL 1157897 (M.D. Fla. Jan 9, 2017).................................................... *passim*

Norton v. Tallahassee Mem. Hosp.,
    689 F.2d 938 (11th Cir. 1982) .............................................................................15

Prudential Ins. Co. of Am. v. Anodyne, Inc.,
    365 F. Supp. 2d 1232 (S.D. Fl. 2005)...................................................................19

Quail Cruises Ship Mgmt. Ltd. V. Agencia de Viagens CVC Limitada,
    2010 WL 2926042 (S.D. Fla. July 23, 2010)........................................................19

Quarterman v. Douglas Cty. Bd. of Comm'rs,
    602 S.E.2d 651 (Ga. 2004)...................................................................................13

SE Prop. Holdings, LLC v. Phillips,
    2016 WL 6246890 (N.D. Fla. May 24, 2016) .......................................................19

SEC v. Nadel,
    2012 WL 12910270 (M.D. Fla. Apr. 25, 2012)....................................................19

Serefex Corp. v. Hickman Holdings, LP,
    2009 WL 10670009 ...............................................................................................18

**Other Authorities**

FRCP Preamble, Comment.....................................................................................20

FRCP Rule 4-3.7....................................................................................................13

FRCP Rule 4-1.9.........................................................................................9, 10, 11

Local Rule 2.04(d) ...................................................................................................9

Defendant MEAG respectfully submits this memorandum in opposition to Plaintiff JEA's motion to disqualify Orrick, Herrington & Sutcliffe LLP ("Orrick") from representing MEAG.[1]

## I.   PRELIMINARY STATEMENT

For 13 years, Orrick has represented MEAG in all matters related to the construction of two additional nuclear generating units at the Alvin W. Vogtle Electric Generating Plant ("Plant Vogtle").  In 2008, Orrick "represented MEAG (a then-adverse party to JEA) in connection with the negotiation and execution of the PPA [Purchase Power Agreement involving Plant Vogtle]." Mot. 1-2 (emphasis added).  Since then, Orrick has continuously represented MEAG regarding Plant Vogtle and the PPA, including as bond counsel and in obtaining loans from the U.S. Department of Energy – all with JEA's full knowledge.  JEA was content with this arrangement even while Orrick served as JEA's counsel on other, unrelated matters through 2011.  But now, in a transparently tactical motion aimed at frustrating MEAG's right to longstanding counsel knowledgeable about a complex transaction (under the guise of protecting "confidences"), JEA seeks to disqualify Orrick.  JEA's motion should be denied.

JEA's motion is premised on a single occasion in November 2008, six months after JEA executed the PPA, in which an Orrick attorney (Neil Wolk) reviewed a draft answer JEA intended to file in a Georgia bond validation proceeding.  JEA's Answer was drafted by MEAG's other counsel (Alston & Bird LLP).  JEA's counsel, Debra Braga of the Office of General Counsel, City of Jacksonville ("OGC"), asked Mr. Wolk, in light of his familiarity with the matter from representing MEAG, to double-check the form and factual accuracy of the

---

[1]      On November 6, 2018, MEAG moved to stay this action (ECF # 30) pending a ruling by the Northern District of Georgia on MEAG's motion to enjoin JEA from further prosecuting this second-filed action in Florida.  MEAG files this opposition to preserve its rights, but requests that this Court stay this action (including this motion) in the interests of efficiency and the conservation of judicial resources.  While MEAG demonstrates herein that JEA's motion for disqualification is baseless, JEA will have a full opportunity to pursue any such motion in Georgia.

Answer.  Mr. Wolk compared the Answer's citations against the Petition and the underlying transaction documents, and returned the draft without comment.  It took 2.75 hours.

Now, all these years later, JEA moves to disqualify Orrick by claiming that Mr. Wolk (i) "counseled" JEA on its legal authority to enter into the PPA and (ii) "advised" JEA to file an answer admitting that authority.  Mot. 18.  That is wrong, as Mr. Wolk states in his declaration.  Orrick did not counsel or advise JEA about its authority (or anything else), nor did Orrick receive any confidential information from JEA.  Tellingly, JEA does not submit a declaration stating otherwise from Ms. Braga or anyone else with personal knowledge.[2]  The absence of evidence by JEA is unsurprising.  Six months before contacting Mr. Wolk, JEA represented in the PPA that it had authority to enter into the PPA.  After the November 2008 bond proceeding, JEA reaffirmed its representations in two subsequent bond proceedings and in the Amended and Restated PPA.  Each time, Orrick was uninvolved and JEA was represented by outside counsel.

Because Orrick did not counsel JEA on the authority issues raised in this case, Orrick has not violated Florida ethics rules concerning adversity to former clients.  But even if JEA could prove otherwise, JEA has not met its burden to prove that the drastic remedy of disqualification is appropriate.  Orrick did not obtain any "confidential" information in its limited review of JEA's bond validation Answer, much less knowledge that could give MEAG an unfair advantage

---

[2]     The relevant facts are established and supported by the Wolk Declaration as well as by the documents submitted with this opposition and the Motion.  Conversely, JEA's motion is unsupported by any declaration executed by a person with personal knowledge.  Given the burden on the movant to establish entitlement to disqualification by reference to admissible evidence, JEA's motion may be denied on that ground alone.  Hamilton Grp. Funding, Inc. v. Basel, 2018 WL 3546242, at *3 (S.D. Fla. July 24, 2018) ("Flowing from this burden of proof, a motion seeking disqualification should be verified and accompanied by supporting affidavits.").  Aaron Zahn, JEA's only declarant to its motion, is the interim CEO of JEA, and has served in that capacity for only seven months.  Mr. Zahn does not aver that he has personal knowledge of all matters alleged, nor could he.  To the extent his statements are speculative or hearsay, go beyond his personal knowledge, or are otherwise in violation of the Federal Rules of Evidence, they are improper and must be disregarded by the Court.  Brown v. Blue Cross & Blue Shield of Fla., Inc., 2011 WL 11532078, at *4 (S.D. Fla. Aug. 8, 2011).

in this case.  Further, for ten years, JEA has known of this supposed conflict.  As JEA's motion

says, MEAG was adverse "then and now."  Mot. 4.  If there was a conflict "then" or in

November 2008, JEA could have raised it.  It did not.  It sat on its hands for a decade.  Even with

litigation anticipated in 2017, JEA never raised a concern about Orrick, instead copying Orrick

on multiple pre-litigation communications (including a litigation hold notice) throughout the

twelve months before the parties commenced litigation.

 JEA's failure to object over all these years not only forfeits the conflict issue it now

raises, it also heightens the substantial prejudice to MEAG if its longstanding counsel is

disqualified.  MEAG and Orrick have worked together on Plant Vogtle for going on 15 years,

deepening their relationship on the project while JEA sat silent with full knowledge.  Sidelining

Orrick now would deprive MEAG of its right to its chosen counsel precisely when it is most

needed.  The tremendous prejudice to MEAG, only elevated by JEA's decade-long delay in

raising this issue, warrants denial of JEA's request for disqualification.

## II. PERTINENT FACTS

### A. Orrick Has Represented MEAG on Plant Vogtle for Over Ten Years With JEA's Full Knowledge and Without Objection

 Beginning in March 2005 and continuing through today, Orrick has continuously

represented MEAG in connection with Plant Vogtle and the PPA.  Wolk Decl. ¶ 3.  From 2005 –

2006, prior to the expansion of the plant and prior to JEA's involvement, Orrick represented

MEAG in its dealings with other owners of Plant Vogtle.  Id. ¶ 4.

### 1. October 2007 – May 2008: Orrick Represents MEAG in Arms-Length Negotiations Across the Table from JEA, Who Is Represented by Its Own Counsel

 From October 2007 through May 2008, Orrick openly represented MEAG in connection

with its solicitation of bids from prospective power purchasers, including JEA, for the new units

at Plant Vogtle.  Wolk Decl. ¶ 5.  Indeed, JEA admits that Orrick represented MEAG, not JEA, in connection with the drafting, negotiation, and ultimate execution of the PPA and its amendments, which is the agreement at issue in this case.  Mot. 1-2, 7.  JEA was represented by OGC (led by Ms. Braga) and by Pillsbury Winthrop Shaw Pittman (led by William Hollaway).  Wolk Decl. ¶ 7.  While today, ten years later, JEA acknowledges that "MEAG [was] adverse to JEA at th[e] time" of the PPA, Mot. 19, back at that time, JEA never once objected to Orrick representing MEAG throughout the parties' many arms-length PPA dealings.  Wolk Decl. ¶ 8.

As counsel for respective counterparties to the PPA transaction, Orrick and JEA's attorneys exchanged numerous rounds of edits, expressly on behalf of their respective clients.[3]  Wolk Decl. ¶ 8.  JEA signed the original PPA in April 2008 (which included approval as to form by JEA's counsel, Ms. Braga of OGC), which MEAG countersigned in May 2008.  The PPA prominently identifies that MEAG was represented by two law firms, Orrick and Alston & Bird.  In turn, the PPA lists JEA's counsel as OGC and Pillsbury.  See id., Ex. 1 at 82-83.

In the PPA that JEA signed in April 2008, JEA set forth extensive representations and warranties attesting to its authority to enter into, and the binding nature of, the PPA.  Wolk Decl. ¶ 10 (detailing JEA's specific representations).  It is those representations that JEA now seeks to disavow in this litigation.

Orrick was not retained to, and never did, advise JEA with respect to its authority to enter into the PPA, nor did Orrick ever advise JEA regarding the representations and warranties in the original PPA (nor in any subsequent document).  Id. ¶ 11.

---

[3]    MEAG does not believe that any documents or correspondence exchanged between and among the parties and counsel for MEAG and JEA are confidential or privileged in any way.  Regardless, out of respect for JEA's request that MEAG not submit such evidence here, MEAG is willing to submit documents and/or correspondence in such manner as the Court deems appropriate.

**2. April 2009 – September 2015: Orrick Represents MEAG in Successive Rounds of Vogtle Financings With No Objection from JEA**

Orrick's open and obvious representation of MEAG in connection with the Vogtle project continued for the next seven years, including three rounds of bond financings, from April 2009 – September 2015. All of this was with JEA's full knowledge and no objection during the entire six years. Wolk Decl. ¶¶ 12-14.

Orrick is prominently identified as MEAG's counsel in numerous documents relating to these financing transactions, including the offering documents for the bond financings. Id. ¶ 13, Ex. 2. In turn, these financing documents list JEA's own counsel, including OGC and the law firm of Rogers Towers, P.A. Id. And, just as with the PPA, JEA's counsel exchanged numerous draft financing documents with Orrick, acting on MEAG's behalf. Id. ¶ 14.

**3. 2009, 2010, and 2014: Orrick Represents MEAG Across the Table from JEA in Negotiating Three Amendments to the PPA, Still With No Objection from JEA**

MEAG and JEA amended the PPA in April 2009 and January 2010, and in December 2014, the parties negotiated an Amended and Restated PPA. As before, Orrick made clear to JEA that it was representing MEAG during negotiations of these amendments and restatements, by among other things, sending MEAG's revisions to documents, expressly on behalf of MEAG, to JEA and its counsel. Wolk Decl. ¶¶ 15-16. JEA never objected to Orrick representing MEAG. Id. Throughout the amendment negotiations and agreements, JEA was represented by OGC and Gibson, Dunn & Crutcher (to which Mr. Hollaway had moved his practice). Id. ¶ 17.

**B. Orrick's Work for JEA Was Entirely Unrelated to the PPA**

For approximately 20 years, Orrick represented JEA on a variety of matters, including bond issuances, derivatives transactions, and other miscellaneous matters, Mot. 3, Wolk Decl. ¶ 20. All of those matters and the related legal analysis were unrelated to the PPA or Plant

Vogtle, with the exception of 4.25 hours between 2008 and 2011, spent reviewing portions of certain JEA public disclosures that mentioned the Project.  Id. ¶¶ 21-22.  Orrick's work for JEA concluded in July 2011.  Id. ¶ 20.

### C. In November 2008, JEA Asked Orrick to Review For Form And Factual Accuracy a Draft Bond Validation Pleading Prepared by MEAG's Other Counsel, Alston & Bird

The crux of JEA's motion turns on a single interaction between JEA and Orrick.  On November 7, 2008, six months after JEA executed the original PPA and represented that it had authority to do so, JEA's counsel, Ms. Braga of OGC, spoke with Orrick's Neil Wolk by telephone.  Wolk Decl. ¶ 23.  Ms. Braga asked Mr. Wolk to review JEA's draft Answer in a bond validation proceeding relating to Plant Vogtle funding.  Id.  JEA's Answer was a *pro forma* document necessary for the approval of the bond validation requested by MEAG, and MEAG and JEA were both nominal defendants/respondents in that proceeding.  Indeed, JEA's draft Answer had been prepared for it by Alston & Bird, which, alongside Orrick, served as MEAG's counsel in the validation proceeding.  Id. ¶ 24.  Ms. Braga asked Mr. Wolk to double-check the form and factual accuracy of JEA's draft Answer to the Petition and Complaint.  Id.  JEA's motion concedes that that JEA merely sought confirmation of "the accuracy" of the draft Answer (Mot. 8), which makes sense given the context of a *pro forma* submission.  Any legal analysis had been done months before by JEA's counsel, OGC.  Id. ¶¶ 25-26.[4]

Ms. Braga did not request of Orrick any legal analysis of the admissions made in JEA's draft Answer, including its reiterations that JEA had been duly authorized to enter into the PPA.  Wolk Decl. ¶ 25.  Ms. Braga transmitted no materials that would have been required for such a

---

[4]      JEA's motion, however, alleges in conclusory fashion that in addition to checking for "accuracy," JEA also sought Orrick's analysis of the Answer's "legal significance."  Mot. 8.  But JEA proffers no evidence to support any such request for legal analysis.  Mr. Wolk, however, confirms based on personal knowledge that he was not asked to advise on the legal significance of the Answer.  Wolk Decl. ¶¶ 24-25.

legal analysis (such as resolutions of JEA's Board of Directors authorizing JEA's execution of the original PPA). Id. Nor did JEA provide Orrick with any confidential or non-public information in connection with its review of the draft Answer. Id.

Mr. Wolk spent a total of 2.75 hours on November 12 and 13, 2008, reviewing the draft Answer and the Petition and Complaint.[5] Wolk Decl. ¶ 27. He did not propose any edits or suggest any changes to Alston & Bird's draft. Rather, he simply confirmed the Answer's form, cross-checked the Answer's numerous citations to the Petition, and confirmed the statements made in the Petition against those in the PPA and underlying transaction documents. He then responded that he did not have any concerns with the document. Id. JEA filed the Answer in exactly the form Alston & Bird had drafted it. Id.

> **D.     In 2017, Due to Increased Costs, JEA Seeks A Way Out of the Project by Disavowing That It Ever Had Authority to Execute the PPA in the First Place, and Includes Orrick on Prelitigation Notices to MEAG**

JEA's Amended Complaint alleges that due to delays and setbacks with the construction of Plant Vogtle, including the bankruptcy of the original construction manager in 2017, the Project is now expected to cost much more than previously anticipated. Am. Compl. ¶ 1. JEA also alleges for the first time since it agreed to the PPA in April 2008 that "it lacked authority as a matter of Florida constitutional, statutory, and municipal law to enter into the PPA." Mot. 13.

JEA anticipated the instant litigation at least a year ago, and consistent with Orrick's representation of MEAG on the Project for over ten years, JEA also anticipated that Orrick would represent MEAG in any such litigation. On September 15, 2017, JEA's outside litigation counsel, Gibson Dunn, sent MEAG "a formal litigation Preservation Notice . . . relating to JEA,

---

[5]     Additionally, JEA notes that 0.3 hours on Orrick's billing statement for November 2008 references the lack of need to obtain a conflict waiver. Mot. 8. The fact is unremarkable given that JEA asked Orrick to review the draft Answer despite JEA knowing that Orrick was representing MEAG – JEA's adverse counterparty – on all matters related to Plant Vogtle.

the PPA, or to Plant Vogtle."  Wolk Decl. Ex. 7.  JEA copied Orrick on the preservation notice.

Two weeks later, on September 29, 2017, JEA wrote MEAG, asserting that JEA's Plant Vogtle obligations had been "discharged" by "unforeseen" events, and seeking to end JEA's involvement.  Ex 8.  JEA copied Orrick on that letter as well.  MEAG responded on February 23, 2018 insisting that JEA provide MEAG with adequate assurances of performance of the PPA, pursuant to the Georgia UCC.  Ex. 9.  JEA disputed MEAG's assertions by letter of March 9, 2018.  Again, JEA copied Orrick.  Ex. 10.  Despite copying Orrick on these extensive pre-litigation communications with MEAG, at no point during the parties' twelve months of pre-litigation discussions did JEA ever object to Orrick's continuing representation of MEAG in connection with the PPA or Plant Vogtle.

### E.    September 2018: Litigation Ensues, and for the First Time in Over 10 Years, JEA Objects to Orrick's Representation of MEAG

On September 11, 2018, MEAG filed a lawsuit against JEA in the Northern District of Georgia, in accordance with the PPA's forum-selection clause, for breach of contract, specific performance, and a declaration that the PPA is valid.  JEA responded by suing MEAG in Florida state court for a declaration that JEA lacked authority to enter the PPA.  MEAG removed JEA's second-filed suit to this Court and has moved for a stay in accordance with the first-filed doctrine.  ECF # 30.  MEAG has also moved to dismiss for lack of personal jurisdiction and, in the alternative, to transfer this case to the Northern District of Georgia.  ECF ## 33, 34.

On October 14, 2018, after more than ten years of arms-length, adverse dealings with Orrick as counsel for MEAG in connection with the PPA and Plant Vogtle, and nearly ten years after the single alleged "representation" in November 2008 on which this motion exclusively relies, JEA demanded by letter that Orrick cease representing MEAG.  This motion followed.

8

### III.    LEGAL STANDARD

"[T]here is a constitutionally based right to counsel of choice," and "[b]ecause a party is presumptively entitled to the counsel of his choice, that right may be overridden only if 'compelling reasons' exist." In re BellSouth Corp., 334 F.3d 941, 955, 961 (11th Cir. 2003). Disqualifying counsel is "a drastic remedy [that] will not be granted lightly," courts thus should "hesitate to impose [disqualification] except when absolutely necessary." Hernandez v. Royal Carribean Cruises, Ltd., 2010 WL 3522210, at *1 (S.D. Fla. Sept. 7, 2010) (citing MetraHealth Ins. Co. v. Anclote Psych. Hosp., Ltd., 961 F. Supp. 2d 1580, 1582 (M.D. Fla. 1997)).  Courts generally view disqualification motions "with skepticism because they are often made for tactical purposes." Law v. OOO RM Invest., 2016 WL 11348826, at *1 (S.D. Fla. Dec. 16, 2016).  The party moving to disqualify counsel bears the "heavy burden" of proving that disqualification is warranted. Mitchell v. Hunt, 2017 WL 1157897, at * 2 (M.D. Fla. Jan 9, 2017).

Motions to disqualify in this Court are governed by the Rules of Professional Conduct of the Rules Regulating the Florida Bar ("FRPC") pursuant to Local Rule 2.04(d), and federal common law.  Herrmann v. GutterGuard, Inc., 199 Fed. Appx. 745, 752 (11th Cir. 2006).

Further, "[i]t is well-settled that disqualification is not mandatory even after a finding that a law firm has violated a conflict of interest rule." See Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc., 2008 WL 1994857, *1 (S.D.Fla. May 6, 2008) (emphasis added).  Factors that courts consider when assessing the drastic sanction of disqualification include (i) the nature of the ethical violation; (ii) the prejudice to the parties; (iii) the effectiveness of counsel in light of the violations; (iv) the public's perception of the profession; and (iv) whether or not the attempt to disqualify an attorney is used as a tactical device or a means of harassment.  Id. at *2.

### IV.    JEA FAILES TO ESTABLISH ANY VIOLATION OF FRPC 4-1.9

Rule 4-1.9 of the FPRC provides:

9

A lawyer who has formerly represented a client in a matter must not afterwards: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent; (b) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or (c) reveal information relating to the representation except as these rules would permit or require with respect to a client.  (emphasis added).

JEA relies exclusively on subsection (a) of Rule 4-1.9, concerning adversity in matters that are "substantially related" to the representation of a former client.  See Mot. 16-20.  A violation of Rule 4–1.9(a) must satisfy a two-part test: (i) the party seeking disqualification must demonstrate an attorney-client relationship with the opposing lawyer and (ii) the matters in the pending suit must be "substantially related" to the matters or cause of action in which the attorney previously represented the movant.  Cox v. Am. Cast Iron Pipe Co., 847 F.2d 725, 728–29 (11th Cir. 1988).[6] JEA's motion fails the "substantial relationship" test.

### A.    Orrick's Prior Representation of JEA Does Not Bear Any Substantial Relation to the Issues Relevant in this Litigation

In determining whether a prior representation is "substantially related," the Eleventh Circuit puts the onus on JEA to "delineat[e] with specificity the subject matters, issues, and causes of action presented in [the] former representation ... [so] the district court [can] determine if the substantial relationship test has been met."  Cox, 547 F.2d at 730 (quoting Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 646 F.2d 1020, 1028 (5th Cir. 1981)).  Specifically:

[T]he focus of the district court's inquiry should be on the precise nature of the relationship between the present and former representations ....  [W]hen dealing

---

[6]    JEA's citation to case law for the proposition that the existence of an attorney-client relationship creates an "irrebuttable presumption" that "confidences" were exchanged is misplaced.  Orrick does not dispute that an attorney-client relationship existed with JEA (albeit unrelated to the issues in this case).  But because JEA is a public entity subject to Florida's sunshine laws, JEA cannot, as a matter of Florida law, have confidential exchanges with an attorney under the circumstances here.  Accordingly, the "presumption" of confidential information cannot arise between JEA and any of its lawyers, Orrick or anyone else.  See infra § IV.B.  In any event, as Mr. Wolk has affirmed, Orrick obtained no "confidences" from JEA that were related to the issue of whether JEA was authorized to enter into the PPA.

> with ethical principles, we cannot paint with broad strokes.  The lines are fine and
> must be so marked.  The conclusion in a particular case can be reached only after
> painstaking analysis of the facts and precise application of precedent.

Duncan, 646 F.2d at 1029.  Under FRCP 4-1.9, a prior representation may be substantially

related if it "could reasonably be understood as important to the issues involved in the present

matter," involves the "same transaction or legal dispute, or if the current matter would involve

the lawyer attacking work that the lawyer performed for the prior client."  Mitchell, 2017 WL

1157897, at *4.  None of those are true here.

The disputed "transaction" in this litigation is the May 2008 PPA (as amended and

restated), and the only relief JEA seeks is a declaration that the PPA is unenforceable because

JEA lacked authority to execute it.  JEA expressly admits that Orrick "represented MEAG … in

connection with the negotiation and execution of the PPA."  Mot. 1-2.

Orrick did not previously "advise" or "represent" JEA with respect to any of the "subject

matters, issues, and causes of action" presented here, as contemplated by Duncan.  JEA's

authority to enter into the PPA was at all times the province of JEA's outside counsel and OGC.

Indeed, long before JEA's Answer in the bond validation proceeding, JEA (represented by its

own counsel) had already attested to its authority in the PPA.  Additionally, in the years after the

execution of the original PPA, JEA made similar statements in two additional bond validation

proceedings.  JEA's counsel, OGC, also issued a series of opinion letters (with no alleged

involvement of Orrick) further reaffirming JEA's authority to enter into the PPA, as part of

various bond issuances between April 2009 and September 2014.  See Wolk Decl. Exs. 3-6.

JEA's broad-stroke, conclusory arguments that it sought counsel and analysis from

Orrick on authority issues, that Orrick represented JEA in the validation proceeding, and that

Orrick "directed" JEA to take action have no evidentiary support.  Zero.  The undisputed

evidence from Mr. Wolk is that Orrick was not asked to and did not provide – as part of the post-

PPA November 2008 bond validation or at any other time – any advice, analysis, or input as to whether JEA had authority to execute the PPA, the sole issue raised in JEA's Complaint.  JEA offers no evidence that disputes Mr. Wolk's sworn statement that he did not "direct" or "counsel" JEA to file the draft Answer.

JEA's suggestion that Orrick obtained relevant "confidential information" while serving as JEA's bond counsel on unrelated matters, or during Mr. Wolk's 2.75 hours double-checking the bond validation Answer (Mot. 19), is baseless.  JEA's motion admits that a lawyer's "general knowledge of a client's policies and practices" are insufficient to preclude a subsequent representation.  Mot. 20.  In any event, JEA provided no "confidential" information to Orrick whatsoever in connection with its review of the MEAG-drafted JEA answer.  Wolk Decl. ¶ 25.[7]

Notably, it was not JEA itself that asked Orrick to review the draft Answer; it was JEA's own counsel, Ms. Braga.  That there is no affidavit from Ms. Braga in support of JEA's motion makes sense because she could not have reasonably believed that Orrick's review of JEA's draft Answer included a legal analysis of whether JEA was authorized to enter into the PPA months earlier.  <u>Contra</u> Mot. 15 (recounting that "the test for determining the existence of an attorney-client relationship" turns on a putative client's "<u>reasonable</u> subjective belief" that the client is seeking legal advice from the client's lawyer (emphasis added) (quoting <u>Keepsake, Inc. v. P.S.I.</u>

---

[7]     JEA is also in a unique position as a public entity, which under Florida public records law, "cannot have confidential meetings and discussions nor keep documents from public view except under very narrow and limited circumstances …. <u>Even the attorney-client privilege is not generally extended to communications between lawyers and governmental clients.</u>"  <u>Concerned Parents of Jordan Park v. Hous. Auth. of City of St. Petersburg, Fla.</u>, 934 F. Supp. 406, 411 (M.D. Fla. 1996) (emphasis added) (rejecting claim that attorney possessed "confidential" information of public body on basis that Florida sunshine law applied, declining to disqualify attorney on that basis).  The "intricacies of JEA's authority" or other "sensitive and confidential" information of JEA is a matter of public record, which JEA is not entitled to shield from the public in the absence of narrow exceptions not present here.

Indus., Inc., 33 F. Supp. 2d 1033, 1036 (M.D. Fla. 1999))).[8]  Indeed, JEA had already made representations and warranties about its legal authority in the PPA.

JEA is also wrong that Orrick should be disqualified because an Orrick attorney, such as Mr. Wolk, could be a potential witness.  Mot. 21-22.  Bond validation proceedings will not be the subject of "substantial testimony."  Under Georgia law, in order to protect bond purchasers who buy bonds in reliance on the validity of the bond offering, bond validation proceedings are conclusive and cannot be attacked or challenged under any circumstances.  See Quarterman v. Douglas Cty. Bd. of Comm'rs, 602 S.E.2d 651, 653-54 (Ga. 2004) ("[E]ven if the judgment of validation is unconstitutional, arguably void, or obtained by fraud, accident, or mistake, it cannot be collaterally attacked with respect to either the revenue bonds or their security.").  The result of the validation proceedings will, therefore, be the subject of judicial notice – nothing more.  There would be no legitimate basis for JEA to attempt to call Orrick lawyers to testify in a vain effort to challenge bond validation judgments that, as a matter of law, are not subject to collateral attack.  In any event, the "attorney witness rule" (FRCP 4-3.7) is "inapplicable … where a lawyer's testimony is sought by the opposing side."  Humphreys v. Ferrero, 2008 WL 11331971, at *2 (S.D. Fla. Oct. 21, 2008) (holding that "Plaintiff's intent to call [defense lawyer] as witness is irrelevant" under FRCP).  MEAG does not intend to call Orrick attorneys to testify.

Nor could this case trigger the concern that Orrick would have to "attack[] work that [it] performed for the prior client."  No party can "attack" the bond validation judgment.  And even if Orrick had been tasked with analyzing JEA's authority – which it was not – and even if Orrick

---

[8]      The very documents JEA submits with its motion demonstrate this.  See Zahn Aff. Ex. At 24, 26 (Orrick Proposal, identifying Orrick's work representing MEAG – not JEA – in bond validation proceedings related to Project Vogtle).  And the only "representation" JEA alleges is with respect to one of the three validation proceedings, in which Orrick's review of the MEAG-drafted answer was negligible and did not concern any authority issues.  JEA makes no claim regarding the two subsequent proceedings that accomplished the same result, which all independently bind JEA.

had advised JEA that it was authorized – which it did not – MEAG agrees that JEA had the authority to enter into the PPA, and thus MEAG would not be attacking that position.  Rather, it is JEA that intends to attack the authority analysis and recommendations that apparently came in and before April 2008 from its own counsel, OGC.[9]

### B.   The "Appearance of Impropriety" Standard Is Inapplicable, Although JEA Cannot Satisfy it in Any Event

JEA argues that permitting Orrick's continued representation would result in an "appearance of impropriety," warranting disqualification.  Mot. 20.  But JEA's own brief admits that the Eleventh Circuit has "rejected the 'appearance of impropriety' as an independent ground for disqualification."  Mot. 21 n.14.  JEA argues that "[c]ourts applying Florida law are split" on whether use of this standard is appropriate, but JEA acknowledges that the FRPC "does not contain an express provision prohibiting the appearance of impropriety."  Id.  And as recently held in this District, "the Eleventh Circuit's holding that 'courts [must] rest their disqualification decisions on the violation of specific Rules of Professional Conduct' … is controlling on this court."  Mitchell, 2017 WL 1157897, at *9.  "[S]ince there is no [FRPC] rule precluding an appearance of impropriety, it cannot be the basis for counsel's disqualification."  Id.  JEA's citation to non-binding district court cases which decline to follow the Eleventh Circuit's mandate should be disregarded in light of controlling Circuit precedent on this point.

Even if the "appearance of impropriety" standard did apply, it would not support disqualification on the undisputed facts.  Prior to Florida's adoption of the FRPC and thus the

---

[9]      JEA's citation to Lane v. Safarti, 676 So. 2d 475 (Fla. 3d DCA 1996), the only case JEA details on this point, is entirely inapposite.  In Lane, the attorney suggested that certain language be added to a client businesses' form contracts, and then later sought to represent another client in litigation against that business, arguing that the contract language the attorney drafted was unenforceable.  That is far afield from this case, where (i) Orrick did not advise JEA on authority at all, in any respect, as part of the bond validation proceeding; and (ii) Orrick makes no challenge to any advice or work it ever may have performed for JEA.

operative law cited above, an appearance of impropriety required (i) at least a reasonable possibility that some specifically identifiable impropriety occurred, and (ii) the likelihood of public suspicion or obloquy outweighs the social interests that will be served by the attorney's continued participation in the case.  Norton v. Tallahassee Mem. Hosp., 689 F.2d 938, 941 (11th Cir. 1982).

JEA argues only that (i) Orrick "switched sides" after allegedly advising JEA regarding its authority and "counseling" it to file the bond validation Answer; and (ii) that Orrick attorneys are likely to be called to testify.  Mot. 21.  These propositions are untrue.  Orrick represented MEAG, not JEA, and did not advise JEA on its authority or direct JEA to file anything.  And there is no prospect for Orrick attorneys to testify because their testimony is entirely unnecessary and irrelevant, both because they did not advise on these issues and because JEA is not entitled to challenge the effect of the bond validation under any circumstance.

Orrick's brief verification of the MEAG-drafted Answer, without any analysis of the substance of the relevant underlying legal issues, does not establish a "reasonable possibility" of impropriety.  Further, as to confidential information, not only was none provided to Orrick, but there could not have been any JEA-confidential information under Florida's sunshine laws.  Due to those sunshine laws, "there is no reasonable possibility of impropriety" because Orrick "is not likely to possess any information for which [the entity] can claim confidentiality."  Concerned Parents, 934 F. Supp. at 411.  And where, as here, "[i]f the attorney did not have access to information that would bestow an unfair advantage in the present case, then disqualification is not appropriate." Gamestreamer, Inc. v. Roberts, 2010 WL 11507869, at *3 (M.D. Fla. 2010).

As to the "likelihood of public suspicion," JEA's contention about "side switching" misses the mark.  Orrick's ministerial work in November 2008 was entirely unrelated to the core

underlying issues of JEA's authority.  Rather, this case is more akin to <u>Mitchell v. Hunt</u>, where a court in this district found that the likelihood of public suspicion was "low or non-existent" where "the prior representation was a dozen years ago, concerning an unrelated matter, in which [the attorney] had a very limited role."  2017 WL 1157897, at *10.  There is also no concern about appearance because Orrick's communication was with Ms. Braga of OGC – not JEA.

## V.    EVEN ASSUMING, *ARGUENDO*, AN FRCP VIOLATION OCCURRED (WHICH IT DID NOT), DISQUALIFICATION WOULD NOT BE WARRANTED

### A.    JEA Fails to Even Address Florida's Multi-Factor Test for Disqualification, Which Counsels Against that Drastic Result

JEA's brief does not address the "well-settled" rule "that disqualification is not mandatory <u>even after</u> a finding that a law firm has violated a conflict of interest rule."  <u>Great Am. Ins. Co.</u>, 2008 WL 1994857, at *1 (emphasis added).  After finding a violation, courts consider five factors to determine whether disqualification is warranted, including (1) the nature of the violation; (2) effectiveness of counsel in light of the violations; (3) the public's perception of the profession; (4) whether or not the attempt to disqualify an attorney is used as a tactical device or a means of harassment, and (5) the prejudice to the parties.  <u>Id.</u>  JEA fails to analyze these factors, and its motion fails for that reason alone.

Review of the relevant factors confirms that the drastic remedy of disqualification is not warranted, especially given that Orrick's minute role is the basis for JEA's motion.  <u>First</u>, even assuming, *arguendo*, that there was an ethical violation, the "nature of the ethical violation" was *de minimis*, at worst.  Orrick represented MEAG, and was adverse to JEA, in all matters related to Plant Vogtle.  The only violation would be that Orrick, like MEAG's other counsel Alston & Bird, provided assistance with JEA's Answer in a bond validation proceeding – in Orrick's case, double-checking the Answer for factual accuracy against the Petition, the PPA, and the underlying transaction documents.

16

Second, there is no question concerning Orrick's continued effectiveness as counsel. This is not a case where Orrick would be "attacking" its own prior advice. Supra at 13. Nor is there a risk of Orrick attorneys taking inconsistent positions, being forced to testify, or having to litigate while hamstrung by being in possession of confidential JEA information it cannot use. Supra at 12-13, 15. Orrick has no such confidential information.

Third, the public's perception of the profession is not at risk. Supra at 14-15 (regarding supposed "appearance of impropriety"). Orrick received no "confidential" information, nor is it using its previous interaction with JEA against it. Supra at 12. Orrick had, at most, minimal and tangential involvement with JEA ten years ago, which JEA is only raising now.

Fourth, in view of JEA's decade-long acquiescence to Orrick's adverse representation of MEAG, JEA's 13th-hour motion is transparently a tactical move to remove Orrick for no other reason but to harass MEAG in hopes that it will increase JEA's leverage to force MEAG to withdraw from, and thereby kill, the Plant Vogtle project. There are no confidences that JEA seeks to protect, nor has Orrick "switched teams." Mot. 21. Orrick has been on MEAG's team since before JEA's involvement with Plant Vogtle.

Finally, and most importantly, the prejudice that disqualification would wreak on MEAG is enormous. Having nothing to do with JEA, Orrick's knowledge of the Plant Vogtle project, the PPA, its execution, and the legal analysis underlying the PPA is unquantifiably immense. Orrick has been working with MEAG on this project for 13 years. JEA's motion not only seeks to deprive MEAG of its constitutionally protected right to the counsel of its choice, it seeks to sideline the counsel that MEAG would turn to for any number of questions that might arise about the PPA, its negotiation, its execution, and its legal support. This would handicap the preparation of MEAG's case and permanently prevent MEAG from consulting with its decade-

17

long counsel about a complex transaction, numerous amendments, and years of follow-up.

While the prejudice to MEAG in disqualifying Orrick is severe, the prejudice to JEA in Orrick remaining on the case is nonexistent. Orrick has no JEA confidential information regarding this matter, and Orrick did not provide JEA any legal advice that it now seeks to use against JEA. JEA made warranties and representations in the PPA about its authority long before Orrick double-checked the factual accuracy of an answer in a bond validation proceeding, and JEA admitted its legal authority to enter into the PPA in two subsequent bond validation proceedings and the amended PPA, all after November 2008. At all times, JEA was represented by its own counsel and was aware that Orrick represented MEAG, an adverse party. JEA is not prejudiced by Orrick continuing to remain MEAG's counsel, as it has for over a decade.

This case is consistent with others where courts reject the "drastic remedy" of disqualification, where the alleged conflict is based on brief, peripheral interactions between the movant and opposing counsel. Atmos Nation., LLC v. Glow Indus., Inc., 2017 WL 5126055, at *4 (S.D. Fla. Apr. 7, 2017) (denying disqualification) ("The attorney's involvement must … be more than peripheral …. The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question."); Serefex Corp. v. Hickman Holdings, LP, 2009 WL 10670009, at *4 (holding that a "brief representation" during which the attorney did not "obtai[n] any confidential information" was not "not cause to disqualify [plaintiffs' attorney]").

### B.      JEA's Knowing, Decade-Long Failure to Object to Orrick's Representation of MEAG Constitutes a Waiver of Any Objection by JEA

JEA's substantial delay in objecting to Orrick's representation counsels against disqualification. As JEA's motion concedes, beginning in 2008, Orrick represented MEAG as "a then-adverse party." Mot. 1-2; see Mot. 4 (JEA arguing conflict was "then and now"). And yet

18

JEA chose never to raise an objection – not at the time and not in the following ten years.  When JEA threatened litigation in September 2017, JEA continued to include Orrick on its communications with MEAG, because it knew full well that Orrick would represent MEAG in litigation.  Wolk Decl. Exs. 7-10.  Notably, JEA never objected to Orrick's long-running, ongoing representation of MEAG.

Where, as here, a party "has known for some time that a law firm represented both parties, yet failed to make a timely objection," that party may be considered to have waived the right to seek disqualification.  Prudential Ins. Co. of Am. v. Anodyne, Inc., 365 F. Supp. 2d 1232, 1240 n.11 (S.D. Fl. 2005).  The clock does not start running when the litigation begins, but rather when the party became aware of the alleged "conflict."  Cases in this circuit recognize that "pre-suit actions or events are relevant in determining when the movant became aware of the conflict and the amount of delay that resulted."  SE Prop. Holdings, LLC v. Phillips, 2016 WL 6246890, at *4 (N.D. Fla. May 24, 2016) (emphasis added) (rejecting disqualification motion based on a knowing, "substantial" delay in objecting, even though movant filed motion within three weeks after the complaint was filed, because of the parties' involvement over the years in related actions).  Here, JEA's delay of over a decade without objection to Orrick's work on Plant Vogtle matters for MEAG is fatal to JEA's motion.[10]

---

[10]    See, e.g., Quail Cruises Ship Mgmt. Ltd. V. Agencia de Viagens CVC Limitada, 2010 WL 2926042, at *5-6 (S.D. Fla. July 23, 2010) (finding waiver based in part on three-month delay after notice of potential litigation, where challenged attorney represented party in negotiation of transaction over a year prior); Concerned Parents of Jordan Park v. Housing Auth. of City of St. Petersburg, Fla., 934 F. Supp. 406, 408 (M.D. Fla. 1996) (finding waiver where Defendant failed to object despite knowledge of "conflict" several months before action commenced); In re Jet 1 Center, Inc., 310 B.R. 649, 651, 654 (Bankr. M.D. Fla. 2004) (bank waived right to challenge attorney who had worked for the bank for "over twelve years" but also represented clients on matters adverse to bank without objection) ("[A] finding [of waiver] is justified ... when a former client was concededly aware of the former attorney's representation of an adversary but failed to raise an objection promptly when he had the opportunity"); SEC v. Nadel, 2012 WL 12910270, at *8 (M.D. Fla. Apr. 25, 2012) (disqualification unwarranted due to delay of two years, where, "at the time [it] hired [the attorney], [movant] knew the [attorney] also represented [the adverse party]"); Chem. Waste Mgmt., Inc. v. Sims, 875 F. Supp. 501, 505 (N.D. Ill. 1995) (finding

JEA's failure to raise any objection at all until now forfeits any objection to Orrick's representation of MEAG, both through delay and via implied consent. See Comment to FCRP Preamble ("Consent may be inferred, however, from the conduct of a client or other person who has reasonably adequate information about the matter."). Guidance to the FCRP provides that "[a] lawyer need not inform a client ... of facts or implications already known to the client" and that "relevant factors" in considering implied consent and forfeiture of objection to conflicts "include whether the client ... is experienced in legal matters generally and in making decisions of the type involved, and whether the client or other person is independently represented by other counsel in giving the consent." Id. Not only was JEA aware at all times, as a sophisticated party represented by its own counsel, JEA was obligated to take swift action on a purported "conflict." But JEA chose instead to sit on its hands for ten years, making no objection and, instead, engaging in extensive dealings and negotiations with Orrick on the other side of the table, representing MEAG. JEA's intentional delay predictably resulted in further deepening of Orrick and MEAG's relationship for over a decade. There is no excuse for a sophisticated party such as JEA to wait as long as it has to raise this issue. Under the circumstances, JEA has forfeited its right to seek the "drastic remedy" of disqualification.

## VI.   CONCLUSION

For the forgoing reasons, this Court should deny JEA's motion to disqualify Orrick.


Dated:  November 13, 2018          By: _____

---

waiver in light of a "twenty-one month delay in objecting to the conflict" including 12 months of delay and negotiations before the case was filed); Gross v. SES Americom, Inc., 307 F. Supp. 2d 719, 723 (D. Md. 2004) (waived based on knowledge obtained "well before the [movants] filed suit ... because the parties participated in protracted negotiations over a period of two years").

ORRICK, HERRINGTON & SUTCLIFFE LLP
J. Peter Coll, Jr. (*pro hac vice*)
John Ansbro (*pro hac vice* admission pending)
51 West 52nd Street
New York, New York 10019
Tel: (212) 506-5000
Fax: (212) 506-5151
pcoll@orrick.com
jansbro@orrick.com

*Counsel for Defendant Municipal Electric Authority of Georgia*