**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | |
|---|---|
| CITY OF JACKSONVILLE, FLORIDA and JEA,<br><br>        Plaintiffs,<br><br>   v.<br><br>MUNICIPAL ELECTRIC AUTHORITY OF GEORGIA,<br><br>        Defendant. | Case No. 3:18-CV-1174-J-39JRK |

**<u>DEFENDANT MEAG'S CONSOLIDATED OPPOSITION
TO PLAINTIFFS' MOTIONS TO REMAND[1]</u>**

Plaintiffs do not contest that this Court has subject matter jurisdiction over this dispute. Instead, they characterize their claims in this action as posing questions that are uniquely, and singularly, issues of Florida law, and invoke the *Brillhart* doctrine in asking this Court to remand the case to state court. However, Plaintiffs' motions ignore several important and undeniable facts, any of which is fatal to their request for remand here: (1) JEA is inviting this Court to circumvent the first-filed rule and issue a potentially inconsistent ruling under the same *Brillhart* doctrine that JEA has already asked the Georgia court to apply in moving to dismiss or stay MEAG's first-filed action in Georgia; (2) the Eleventh Circuit has never endorsed the application of *Brillhart* where, as here, no parallel state court proceeding exists; (3) Plaintiffs portray this action as involving issues of importance to only Florida, when in fact

---

[1] Plaintiffs each filed a separate motion to remand based upon the same grounds. (*See* ECF ## 28, 29). This consolidated opposition addresses both motions.

the agreement in question is governed by *Georgia* law, affects hundreds of thousands of *Georgia* residents, and must be evaluated against the backdrop of threshold questions of *Georgia* law, including JEA's active and willing prior participation in related bond validation proceedings in *Georgia* courts pursuant to *Georgia* law; and (4) in any event, Plaintiffs have affirmatively prosecuted their claims against MEAG in this Court, thereby waiving their right to seek remand.

Indeed, this dispute involves citizens of two different states, raises legal issues arising under the laws of both of those states, and has the potential to affect residents and communities in both of those states. Accordingly, this is precisely the type of case for which diversity jurisdiction was created so that the matter could be addressed in federal court. Neither *Brillhart* abstention nor any of Plaintiffs' attempts at artful pleading should convince this Court to decline to exercise its statutorily conferred jurisdiction.

## RELEVANT BACKGROUND

### A.     The Parties' PPA

MEAG and three other Georgia-based entities own the Alvin W. Vogtle Electric Generator Plant located in Burke County, Georgia ("Plant Vogtle"). (Am. Cmplt. ¶ 14). In 2005, the co-owners of Plant Vogtle agreed to develop two additional nuclear generator units. (*Id*. ¶¶ 15-16). MEAG entered into a Power Purchase Agreement ("PPA") with JEA for the purchase and sale of power from a portion of MEAG's interest in those new units. (*Id*. ¶ 23). The City of Jacksonville is JEA's principal. (*Id*. ¶ 4).

The PPA authorizes MEAG to issue bonds and draw upon Department of Energy loans to finance the construction of the Plant Vogtle expansion. (*Id*., Ex. A Art. IV). Under the PPA,

JEA is responsible for repaying a certain portion of these debts, "whether or not" the expansion is "completed or is operating or operable." (*Id*., Ex. A § 204(g)).

The PPA is governed by Georgia law, and has an exclusive forum-selection provision requiring all disputes that the parties cannot settle themselves to be submitted to the United States District Court for the Northern District of Georgia or the Superior Court of Fulton County, Georgia. (*Id*., Ex. A §§ 801(a), 1003).

### B.    MEAG's First-Filed Action in Georgia

On September 11, 2018 at 2:42 p.m., MEAG filed a lawsuit against JEA in the Northern District of Georgia in response to a series of actions that JEA took to interfere with, breach, or otherwise exit from the PPA. *MEAG v. JEA*, No. 1:18-cv-04295-MHC (N.D. Ga.) ("Georgia Action"), ECF # 1 ("Ga. Cmplt.") ¶¶ 35-42. MEAG's Complaint in the Georgia Action asserts that the PPA is fully enforceable and alleges that JEA has breached the PPA by failing to cooperate in effectuating its intent, resulting in actual and impending injury to MEAG. *Id*. ¶¶ 43-67. MEAG seeks money damages and specific performance resulting from JEA's breach as well as a declaration that the PPA is enforceable. *Id*. at 21.

On October 2, 2018, JEA moved to dismiss or stay the Georgia Action. JEA argued, among other things, that the Georgia court should apply the *Brillhart* abstention doctrine—the same doctrine that Plaintiffs invoke as the basis for their remand motions here—and decline to hear the Georgia Action because the issues raised therein are "also the subject of" this second-filed action in Florida. Mot. to Dismiss (Ga. Action, ECF # 5) at 1-2; Mem. Of Law (Ga. Action, ECF # 5-1) at 12-15. MEAG opposed JEA's Motion to Dismiss on October 16, 2018, arguing, among other things, that the Georgia action was filed first, the PPA contains an

3

exclusive forum-selection provision in favor of Georgia courts, and the relevant *Brillhart* factors do not warrant abstention in these circumstances. Opp. (Ga. Action ECF # 10) at 15-16. JEA's motion to dismiss is fully briefed and awaiting a decision from the Georgia court.

On October 30, 2018, MEAG filed a motion in the Georgia Action requesting that the Georgia court enforce the first-filed rule by enjoining JEA from further prosecuting this later-filed action in Florida. (Ga. Action, ECF # 24). Briefing on MEAG's first-filed motion is set to conclude within two weeks.

### C. This Second-Filed Action

Approximately nine hours after MEAG commenced the Georgia Action, and approximately seven hours after receiving a copy of the Georgia Complaint, Plaintiffs filed this action against MEAG in the Circuit Court of Duval County Florida. (Cmplt., ECF # 2). The sole relief Plaintiffs seek in this action is a declaratory judgment that the PPA is unenforceable. (*Id*. ¶ 98). MEAG subsequently removed this action to this Court pursuant to 28 U.S.C. § 1332, because the parties are diverse and the amount in controversy exceeds $75,000. (ECF ## 1, 12). Plaintiffs do not dispute that this Court has subject-matter jurisdiction over this action.

On October 5, 2018, MEAG moved to transfer this action to the Georgia court on the grounds that the Georgia Action was filed first; there is a mandatory forum-selection clause in the PPA requiring the parties to litigate in Georgia courts; the Georgia forum is the most convenient for the parties in light of the allegations, issues, evidence, and witnesses involved; and this Court lacks personal jurisdiction over MEAG. (ECF # 5). In response to the personal jurisdiction arguments raised in MEAG's motion to transfer, Plaintiffs sought permission to

4

take "immediate jurisdictional discovery" from MEAG, which they anticipated would take "months" to complete. (ECF ## 8, 20).

Instead of opposing MEAG's motion to transfer, Plaintiffs filed an Amended Complaint on October 25, 2018, which adds, among other things, new substantive allegations in support of Plaintiffs' declaratory judgment claim. (Am. Cmplt. ¶¶ 8-11). As with Plaintiffs' original Complaint, the sole relief sought by the Amended Complaint is a declaratory judgment that the PPA is unenforceable, based entirely on JEA's own allegedly *ultra vires* actions. *Id.* ¶¶ 105-07. Plaintiffs' Amended Complaint mooted MEAG's October 5 motion to transfer. (Order, ECF # 31). Accordingly, MEAG has since filed renewed motions to dismiss and transfer. (ECF ## 33-34).

On October 30, 2018, Plaintiff JEA filed a motion to disqualify the law firm of Orrick, Herrington & Sutcliffe LLP as counsel for MEAG in this action. Over the next two days, JEA and the City, respectively, filed separate motions to remand this action to Florida state court. (ECF # 28 ("JEA Mot."); ECF # 29 ("City Mot.")). Plaintiffs' remand motions seek to have this Court apply the same *Brillhart* doctrine that JEA has already asked the Georgia court to apply in the parties' first-filed Georgia action as the basis for JEA's motion to dismiss.

Finally, on November 6, 2018, MEAG filed a motion in this action to stay all proceedings pending the Georgia court's ruling on MEAG's first-filed motion for an order enjoining JEA from further prosecuting this second-filed action. (ECF # 30).

## ARGUMENT

### I. PLAINTIFFS' REMAND MOTIONS SHOULD BE STAYED PENDING RESOLUTION OF MEAG'S FIRST-FILED MOTION IN GEORGIA

As explained further in MEAG's November 6 motion to stay all proceedings in this

5

action (ECF # 30), this Court should stay this litigation, including adjudication of Plaintiffs' instant remand motions, during the pendency of MEAG's motion in the Georgia Action to enjoin JEA from prosecuting this later-filed action based on the first-filed rule. This is because of the risk of inconsistent rulings in the parties' two parallel lawsuits, as well as to avoid an unnecessary waste of judicial and party resources. The risk of inconsistent rulings is especially high here given that Plaintiffs' instant remand motions ask this Court to adjudicate *the exact same Brillhart* abstention doctrine that JEA has already asked the Georgia court to rule upon in JEA's October 2 motion to dismiss or stay the Georgia Action.

Based on such considerations, courts regularly stay second-filed proceedings pending the resolution of jurisdiction and forum-related motions by the first-filed court. *See, e.g.*, *Valpak Direct Mktg. Sys., Inc. v. Valpak of Cincinnati, Inc.*, No. 805-cv-1420-T-24MSS, 2005 WL 2416061 (M.D. Fla. Sept. 30, 2005) (staying second-filed case pending first-filed court's adjudication of motion based on forum-selection clause). Indeed, under Eleventh Circuit precedent, forum-related questions—such as Plaintiffs' instant remand motions—are for the *first-filed* court to adjudicate. *See, e.g.*, *Municipal Gas Authority of Georgia v. Town of Smyrna, Tenn.*, No. 1:11-CV-2476-JEC, 2012 WL 1038649, at *2 (N.D. Ga. Mar. 27, 2012) (enforcing first-filed rule despite plaintiff's pending motion to remand second-filed action based on *Brillhart* abstention doctrine, because "jurisdictional concerns are a matter for the first forum to resolve, rather than the second"); *see also Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013) ("The first-filed rule not only determines which court may decide the merits of substantially similar cases, but also generally establishes which court may decide whether the second-filed suit must be dismissed, stayed, or transferred

6

and consolidated."). Accordingly, the Court should stay adjudication of Plaintiffs' remand motions pending the Georgia court's resolution of MEAG's first-filed motion.[2]

Should this Court decide to proceed with this case, it should first resolve MEAG's motion to dismiss for lack of personal jurisdiction (ECF # 33) before considering Plaintiffs' motions to remand. MEAG raised its jurisdictional arguments long before Plaintiffs sought remand (ECF #5), and if MEAG prevails on its motion to dismiss, it will moot the remand motions. Neither JEA nor the City argue that there is any reason for the Court to abstain from considering personal jurisdiction, and the straightforward jurisdictional arguments MEAG has raised place this case squarely in the "mine run of cases" where resolving the "jurisdiction[al]" dispute "will involve no arduous inquiry" that would prevent "the federal court" from "dispens[ing] of [this] issue[] first." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007) (internal quotation marks omitted).

## II. IN ANY EVENT, PLAINTIFFS' REMAND MOTIONS SHOULD BE DENIED

Plaintiffs' motions to remand should be denied because: (1) the *Brillhart* abstention doctrine does not support remand here; and (2) in any event, Plaintiffs have waived their right to remand.

### A. Remand Is Not Warranted Under *Brillhart* Abstention

Plaintiffs do not contest that this Court has subject-matter jurisdiction over this

---

[2] In the event the Georgia court enjoins JEA from further prosecuting this second-filed action, JEA will have a full opportunity to renew its request for remand in the Georgia court. "A district court … has authority to remand a case to the State court from which it was removed." *Taliaferro v. Goodyear Tire & Rubber Co.*, 265 F. App'x 240, 244 (5th Cir. 2008) (internal quotation marks omitted). "[J]ust as the district court in Florida could [] remand[] the case to Florida state court if it f[inds] any jurisdictional defects, after transfer so too could the district court in [Georgia]." *In re Fed.-Mogul Glob. Inc.*, 300 F.3d 368, 386-87 (3d Cir. 2002) (citations omitted) (discussing precedent for district courts to issue cross-jurisdictional remands).

dispute. Instead, they ask this Court to exercise its discretion to abstain from deciding this case, based on *Brillhart v. Excess Insurance Co.*, 316 U.S. 491 (1942).

As an initial matter, Plaintiffs have not demonstrated why *Brillhart* abstention should apply at all in this case. *Brillhart* abstention exists to avoid the pitfalls of a federal court interfering with a separate case proceeding in state court. *But there is no state court case here*. Plaintiffs hope to *create* a state court case by convincing this Court to remand, and then they hope to convince the Georgia court—where MEAG's first-filed complaint requests money damages and specific performance in addition to declaratory relief—to abstain because of the remand. Plaintiffs' motions simultaneously seek to undermine *Brillhart* abstention, diversity jurisdiction, and the first-filed rule all in one fell swoop. Plaintiffs also misapply and overstate each of the factors that courts consider when evaluating whether to abstain under *Brillhart*, while at the same time underselling the extent to which Georgia law will predominate in this case. This case—between citizens of different states, involving questions arising under the laws of different states—is the quintessential case for which diversity jurisdiction was intended. This Court should deny Plaintiffs' motions.

> 1. *Brillhart* Abstention Is Inapplicable, or at a Minimum Highly Disfavored, Where There Is No Parallel State Court Action

Plaintiffs admit that "[t]he traditional fact pattern for applying the *Brillhart* doctrine consists of a federal declaratory judgment action involving a question of state law and a pending, parallel state court action regarding substantially the same issue(s)." (JEA Mot. at 9). That is correct. The *Brillhart* doctrine exists because "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit *where another suit is pending in a state court presenting the same issues*, not governed by federal law, between the

same parties." *Brillhart*, 316 U.S. at 495 (emphasis added). Where, as here, there is no parallel suit proceeding in state court, there is no risk of the sort of "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation" that *Brillhart* aimed to avoid. *Id.* Indeed, the Supreme Court has held that "principles of comity and federalism do not require that a federal court abandon jurisdiction it has properly acquired" where, as here, "a similar suit is *later* filed in a state court." *Town of Lockport, New York v. Citizens for Cmty. Action at Local Level, Inc.*, 430 U.S. 259, 264 (1977) (emphasis added).

The Eleventh Circuit has likewise refused to apply *Brillhart* when no parallel state action exists, holding that it is "an abuse of discretion … to dismiss a declaratory judgment action in favor of a state court proceeding *that does not exist*." *Fed. Reserve Bank of Atlanta v. Thomas*, 220 F.3d 1235, 1247 (11th Cir. 2000) (emphasis added); *see also Michigan Tech Fund v. Century Nat'l Bank of Broward*, 680 F.2d 736, 742 (11th Cir. 1982) (reversing discretionary dismissal of declaratory judgment action because there was "no pending state proceeding in which the issues in this case will necessarily be resolved").

A handful of other circuits (not binding here) do consider *Brillhart* abstention in the absence of a parallel state court action. But even those circuits "agree that the *broad* discretion granted in [*Brillhart* and] *Wilton* does not apply when there are no parallel state court proceedings." *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 998 (8th Cir. 2005) (emphasis added). Instead, as stated by the Third Circuit in a case that JEA relies on, "the absence of pending parallel state proceedings militates *significantly* in favor of exercising jurisdiction." *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 144 (3d Cir. 2014) (emphasis added) (*cited by* JEA Mot. 17-18). Furthermore, most of these other circuits have never invoked

9

*Brillhart* to *remand* a case to state court, as Plaintiffs request here. Instead, they have simply assessed a district court's exercise of discretion in declining to adjudicate a case altogether, through dismissal or the issuance of a stay.

Plaintiffs' only response is to cite a handful of district court cases and two out-of-circuit cases that allowed a party to seek remand based on *Brillhart* even when there was no parallel state action. (*See* JEA Mot. at 9-10, 18-19). Again those cases are not binding on this Court, and the Eleventh Circuit has never endorsed their approach.[3] More fundamentally, none of Plaintiffs' cited cases grapple with the basic flaw in the argument that a court should remand absent a parallel state court case: none of the risks that give rise to the *Brillhart* doctrine exists in these circumstances, so the reason for its application vanishes. Because there is no risk of "gratuitous interference with the orderly and comprehensive disposition of a state court litigation" in this case, *Brillhart*, 316 U.S. at 495, this Court need not even consider the various factors that Plaintiffs recite in support of their remand motions. Rather, the remand motions can and should be denied for this reason alone.

---

[3] The decisions from district courts in this circuit that JEA cites are not to the contrary. In *Univ. of Georgia Athletic Ass'n, Inc. v. Fireman's Fund Ins. Co.*, there was a pending state court insurance coverage dispute at the time one of the defendants filed a declaratory judgment action in state court that was subsequently removed to federal court; accordingly, as the court explained, the declaratory judgment action in federal court was "inextricably intertwined with the claims being asserted in [the] underlying damages action" in state court. No. 3:05-CV-94 (CDL), 2006 WL 1652482, at *2 (M.D. Ga. June 13, 2006). In *Hermitage Ins. Co. v. Jack Hamilton Constr. of Cent. Fla., Inc.*, the court's principal basis for remand was because not all defendants had consented and therefore "removal was improper." No. 08-CV-879-FTM-99DNF, 2009 WL 10670001, at *4 (M.D. Fla. May 12, 2009). Any additional comments about *Brillhart* were not central to the court's holding, and were inconsistent with *Brillhart* for the reasons explained above. The Ninth Circuit case, meanwhile, held only that the district court did not abuse its discretion by remanding due in part to the fact there was no risk of "duplicative litigation" after the two parallel cases at issue had already been consolidated in the same federal court. *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 803 (9th Cir. 2002). If anything, *Huth* only highlights why this Court should transfer the entire action to Georgia and let that Court decide how to proceed.

### 2. Even If Remand Based on *Brillhart* Abstention Is Available Here, It Is Not Warranted Based on the Relevant Factors

Even assuming for the sake of argument that *Brillhart* abstention is available in these circumstances, it would not be warranted here. Contrary to Plaintiffs' assertions, this is not a case that deals purely with Florida law, nor is it purely a local matter. Rather, it is a case involving closely intertwined issues of Georgia law, Florida law, and federal law. In other words, it is the canonical diversity jurisdiction case—one in which neither party should enjoy the advantage of "home turf" in state court.

The Eleventh Circuit has identified nine non-exclusive factors that a court should consider when evaluating a motion to abstain under *Brillhart*. *See Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005). These factors weigh heavily in favor of this Court retaining jurisdiction and denying Plaintiffs' motions for remand. MEAG addresses each in turn.[4]

> *(1)   the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts*

Florida does not have a stronger interest in this matter than Georgia does. Buried in a footnote, JEA claims that Florida law "predominates" in this dispute. (JEA Mot. at 12 n.10). That is wrong. As an initial matter, given the PPA's choice-of-law provision, any disputes between the parties about the meaning of the PPA must be decided under *Georgia* law. (*See* Am. Cmplt., Ex. A § 1003).[5]

---

[4] Each numbered, italicized factor below is directly quoted from *Ameritas*. 411 F.3d 1331.

[5] JEA appears to have a separate vein of attack on the PPA which would be exclusively governed by Georgia law and which must be litigated in Georgia when, as expected, FERC declines to exercise jurisdiction over the PPA. To wit, in statements in its petition to FERC and also in this litigation, JEA has complained about increasing costs

In addition, MEAG will argue that multiple bond validation proceedings in Georgia over the past ten years bar Plaintiffs' claims under Georgia law. *See* O.C.G.A. §§ 46-3-131, 46-3-132 (providing that MEAG validation proceedings "shall be forever conclusive," thus barring collateral attacks); *see also Quarterman v. Douglas Cty. Bd. of Comm'rs*, 602 S.E.2d 651, 654 (2004) (holding that validation proceedings bar collateral attack on the basis that a contract was invalid "regardless of whether that contract was authorized under the constitutional and statutory law of this state"). If the Court agrees, then it will not even have occasion to consider any of the issues of Florida constitutional or statutory law or public policy invoked by Plaintiffs in their Complaint. Additionally, the Georgia validation proceedings must be given their full effect under the Full Faith and Credit clause of the U.S. Constitution (U.S. Const., Art. IV § 1), an issue of federal law that a federal court is best positioned to adjudicate. Furthermore, Florida courts have rarely (if ever) construed Georgia statutes governing bond validation proceedings, and the statute that specifically governs MEAG has never been interpreted by a Florida court, or by any federal court, and has been addressed in only one published decision in Georgia. *See Thompson v. Mun. Elec. Auth. of Georgia*, 231 S.E.2d 720, 723 (Ga. 1976).

By contrast, and contrary to JEA's unsupported yet frequent refrain that the Florida law

---

and delays in the Vogtle project, none of which are relevant to the *ultra vires* arguments it presents in this litigation. *See, e.g.*, Petition for Declaratory Order (filed Sept. 17, 2018) FERC Docket No. EL18-200-000 at pp. 7-9, 14-15 (attached to ECF # 27-1); *see also* JEA Motion for Remand, ECF # 28 at pp. 2-4; JEA Complaint at para. 37-44 (detailing cost increases and project delays). This double-barreled approach is why JEA is simultaneously seeking to have FERC exercise "exclusive" jurisdiction and proceed in Florida. *See also* ECF # 28 at p. 6-7 (arguing that "fundamental issues of law" before this Court would "moot the FERC proceedings"). Issues of the enforceability of the PPA in light of the cost increases and delays pertain to the performance of the PPA and, without dispute, are governed by the parties' mandatory venue provision at § 801 of the PPA. *See* ECF # 28 at n. 12.

4127-0179-6888.9

issues in this case are "novel" and "unsettled" (JEA Mot. at 1, 7, 8, 11, 12 & n.10, 13, 15), the Florida constitutional provision that Plaintiffs claim is at issue here (Article VII, § 10) has generated more than a hundred state court decisions, which guided this Court well when it decided a different dispute under that provision. *Jackson-Shaw Co. v. Jacksonville Aviation Auth.*, 510 F. Supp. 2d 691, 731 (M.D. Fla. 2007). Finally, most, if not all, of Plaintiffs' cited cases involve insurance coverage disputes, which the Eleventh Circuit has specifically described as "peculiarly a question of state law." *Claussen v. Aetna Cas. & Sur. Co.*, 865 F.2d 1217, 1217 (11th Cir.) (certifying question to Supreme Court of Georgia "[b]ecause this case involves interpretation of an insurance contract provision, peculiarly a question of state law"). Where, as here, a dispute clearly involves the laws of two different states, the first factor weighs heavily against remand.

> *(2)   whether the judgment in the federal declaratory action would settle the controversy*
> *(3)   whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue*

The second and third factors both counsel against remand as well. If this Court (or the Northern District of Georgia) renders a decision on the enforceability of the PPA, it will settle the entirety of Plaintiffs' claims against MEAG. Plaintiffs confusingly claim that these factors weigh in favor of remand because any judgment from this court "would not constitute a binding and conclusive pronouncement of Florida law." (JEA Mot. at 13). That is a complete red herring. The *Ameritas* factors ask whether this federal action "would settle the controversy" between the parties and "would serve a useful purpose in clarifying the legal relations at issue." 411 F.3d at 1331. Those factors do not turn on whether this Court's decision will have future precedential weight in some other case between other parties. JEA does not and cannot dispute

that this Court (or the Northern District of Georgia) can settle the present dispute between the parties, or that a decision from either federal court regarding the enforceability of the PPA would have a res judicata effect on the parties, or that such a decision would settle the parties' obligations under the PPA. *Cf. Dalbon v. Women's Specialty Retailing Grp.*, 674 So. 2d 799, 801 (Fla. Dist. Ct. App. 1996) (holding that Florida state courts must give preclusive effect to federal court judgments).

> (4) *whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable*

Plaintiffs claim that MEAG has engaged in procedural fencing. (JEA Mot. at 14). That has it backwards. MEAG is the party that filed first, MEAG is the party that seeks money damages and specific performance (not just declaratory relief), and MEAG is the party that adhered to the parties' agreed-upon, mandatory forum-selection clause by filing in Georgia.[6] Plaintiffs filed second in their home court, to which MEAG had not and does not consent and that lacks personal jurisdiction over MEAG. Additionally, "procedural fencing" exists when a party seeks *only* declaratory judgment. *See Mun. Gas*, 2012 WL 1038649, at *4 (action not anticipatory where it "also seeks monetary damages" in addition to declaratory relief); *Kate Aspen, Inc. v. Fashioncraft-Excello, Inc.*, 370 F. Supp. 2d 1333, 1339 (N.D. Ga. 2005) (same). *Plaintiffs* seek only declaratory relief, not MEAG, and they do not even allege in their Amended Complaint that MEAG did anything wrong or violated any law. Their lawsuit is

---

[6] Plaintiffs claim that the PPA has two forum-selection clauses. They are wrong. The only forum-selection clause in the PPA is located at Section 801(a). The second provision Plaintiffs refer to, Section 1003, is a waiver of objections based on personal jurisdiction, venue, and *forum non conveniens*; it is clearly not a forum-selection provision. MEAG has addressed Plaintiffs' argument in further detail in its Motion to Transfer. (*See* ECF # 34 at 8-11).

14

nothing but a naked attempt to back out of a contract that JEA now regrets due to increasing costs, and even with that goal in mind, Plaintiffs have been unable to identify a single wrongful act by MEAG.  Instead, the face of Plaintiffs' Amended Complaint makes clear that this action is truly a dispute between *JEA* and *the City*.  Accordingly, *this* case, not MEAG's Georgia Action, is anticipatory procedural fencing.

> (5)     *whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction*

The fifth factor similarly does not favor remand.  On one side of the equation, Plaintiffs never explain what friction would arise if this Court considers Plaintiffs' claims, or how doing so would interfere with or encroach upon state court jurisdiction.  As discussed above, there is no pending state court litigation between the parties on these issues; everything is pending in federal court.  This factor is simply not relevant when there is no other state court action with which this Court could even interfere.  On the other side of the equation, Plaintiffs ignore the prevalence of Georgia law in this case, and the risk of friction between the states if a Florida state court interprets Georgia law and resolves an important dispute involving Georgia law between two Florida citizens and a Georgia citizen.  This is precisely why Congress enacted diversity jurisdiction: so that federal courts "shall have original jurisdiction" in consequential diversity cases (*i.e.*, where the amount-in-controversy requirement is met).  28 U.S.C. § 1332.

> (6)     *whether there is an alternative remedy that is better or more effective*

There is no alternative remedy to litigation in federal court that would be better or more effective.  Plaintiffs will be seeking the same remedy whether this case is heard in federal or state court, and both courts are equally empowered to provide it.  In addition, regardless of

what this Court chooses to do, the Georgia Action may well still proceed in federal court in the Northern District of Georgia. That possibility of inconsistent results is why the first-filed rule exists and why MEAG has moved for an injunction in Georgia and a stay in this matter.

> *(7) whether the underlying factual issues are important to an informed resolution of the case*
> *(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court and*

These factors do not favor remand because this case will likely turn on questions of law, not fact. Indeed, beyond Plaintiffs' broad generalizations that this case affects many Floridians (it affects just as many, if not more, Georgians), the best Plaintiffs can muster as an example of "factual issues" are those "relating to JEA's scope of authority under Florida law." (JEA Mot. at 16). But questions about JEA's "scope of authority under Florida law" are legal inquiries, not factual ones. JEA's inability to flag a single significant factual dispute that a state court should decide puts both factors to rest.

> *(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action*

Finally, there is no "close nexus between the underlying factual and legal issues and state law and/or public policy" that would warrant remand. *Ameritas*, 411 F.3d at 1331. While Plaintiffs recite Florida state law and public policy in their claims for relief, as explained above, this case will necessarily involve Georgia law and interpretation of a Georgia contract; it may never be necessary to reach issues of Florida law and policy at all. And even if the Court does reach Florida law issues, JEA was surely aware at the time it entered the PPA that the supply of electricity and associated costs would affect Florida residents, yet it agreed that only a

16

*Georgia* court could consider disputes arising under the PPA and that only *Georgia* law would govern the contract.  (*See* Am. Cmplt., Ex. A §§ 801(a), 1003).  JEA cannot now turn around and argue that any policy concerns that the PPA creates are so critical that only a Florida court applying Florida law can consider them.

This case will also raise issues of federal law that will precede any questions of Florida law.  The Georgia bond proceedings and validation statutes will likely lead MEAG to argue that this action is barred by res judicata, a "federal common … law" doctrine that may "dictate[] a resolution of the declaratory judgment action," *id; see also Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001) (holding that claim preclusion in a diversity action is a question of federal common law), as well as by the Full Faith and Credit Clause of the U.S. Constitution.

The City's separate motion states that "it cannot be overstated that the enforcement and interpretation of the Charter is inherently and uniquely local in character and the federal system simply has no interest in these unique, important, and complex matters involving the core organic laws of our local government."  (City Mot. at 16).  That argument is entirely misguided.  As already discussed above, those questions of Florida law may never be reached if MEAG prevails on threshold issues governed by Georgia and federal common law.  Furthermore, the Constitution vests federal courts with jurisdiction in disputes between citizens of different states due to "the fear that state courts would be prejudiced against out-of-state litigants, particularly when opposed by an in-stater."  13 E Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3601 (3d ed. 2008).  Here, in a potentially multibillion dollar dispute between utilities serving hundreds of thousands residents (if not more) in two different states,

17

it is particularly important that the claims are heard in a neutral federal forum, not on either side's home turf.

This case is the quintessential dispute between diverse parties that Congress intended a federal court to hear. Because the only ongoing litigation between the parties is in federal courts (not state court), threshold issues controlled by Georgia and federal common law may obviate the need for federal courts to ever reach the questions of Florida law that Plaintiffs have raised, Plaintiffs are the ones guilty of procedural jousting, and federal courts are not only fully capable of resolving the dispute between the parties but offer a preferable forum to do so, none of the *Ameritas* factors should lead a federal court to abstain or remand under *Brillhart*. Should the Court reach this issue, it should deny Plaintiffs' motions to remand.

### B.     Plaintiffs Have Waived Their Right To Remand

Even if this Court concludes that *Brillhart* abstention is warranted here, it should still deny Plaintiffs' motions because they have waived their right to seek remand. After MEAG removed this action to federal court, but before filing the instant remand motions, Plaintiffs have: sought months-long jurisdictional discovery in this court; amended their complaint to add new substantive allegations; and moved to disqualify one of the law firms representing MEAG. "It is settled that when a party undertakes affirmative action in the federal district court, she has acquiesced in the federal court's jurisdiction and waived objection to the removal." *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 904 (6th Cir. 1988).

Indeed, the Supreme Court has held that "[t]he mere filing of an amended petition" is sufficient to waive any right to seek remand. *In re Moore*, 209 U.S. 490, 496 (1908), *overruled on other grounds by Ex parte Harding*, 219 U.S. 363 (1911). District courts in the Eleventh

Circuit have also adhered to this rule.  *See Bouverat v. Park W. Gallery, Inc.*, No. 08-cv-21331, 2008 WL 11332044, at *2 & n.1 (S.D. Fla. Oct. 29, 2008) (plaintiff waived right to remand by filing amended complaint).  Even the cases Plaintiffs cite recognize that seeking affirmative relief in federal court waives the right to seek remand.  *See* JEA Motion at 19.  Having asked this Court to lend its resources and jurisdiction to help them prosecute this litigation against MEAG, on issues that they could have easily raised in state court *after* remand, Plaintiffs cannot now claim that this Court should not decide the rest of the dispute.  *See Harris v. Edward Hyman Co.*, 664 F.2d 943, 945 (5th Cir. 1981) (finding waiver based on the plaintiff "participating in discovery in federal court").

## **CONCLUSION**

For the foregoing reasons, this Court should deny, if it does not stay, Plaintiffs' motions to remand.


Date:   November 14, 2018                          Respectfully submitted,

                                        *s/ Michael G. Tanner*
                                        Michael G. Tanner
                                        Florida Bar No. 261300
                                        Helen P. Roberson
                                        Florida Bar No. 016196
                                        TANNER BISHOP
                                        1 Independent Drive, Suite 1700
                                        Jacksonville, Florida 32202
                                        Telephone:    (904) 598-0034
                                        Facsimile      (904) 598-0395
                                        *mtanner@tannerbishop.com*
                                        *hpeacock@tannerbishop.com*

                                        Rebecca Woods
                                        (admitted pro hac vice)

>Seth Fortin
>(admitted pro hac vice)
>SEYFARTH SHAW LLP
>1075 Peachtree Street, N.E., Suite 2500
>Atlanta, Georgia 30309-3962
>Telephone: (404) 885-1500
>Facsimile: (404) 892-7056
>*rwoods@seyfarth.com*
>*sfortin@seyfarth.com*
>
>Michael R. Levinson
>(admitted pro hac vice)
>SEYFARTH SHAW LLP
>233 South Wacker Drive, Suite 8000
>Chicago, Illinois 60606-6448
>Telephone: (312) 460-5000
>Facsimile: (312) 460-7000
>*mlevinson@seyfarth.com*
>
>J. Peter Coll, Jr.
>(admitted pro hac vice)
>ORRICK, HERRINGTON & SUTCLIFFE LLP
>51 West 52nd Street
>New York, New York 10019-6142
>Telephone: (212) 506-3790
>*pcoll@orrick.com*
>
>*Attorneys for Defendant MEAG Power*

## CERTIFICATE OF SERVICE

I certify that on November 14, 2018, I electronically filed a copy of the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of the electronic filing to those persons registered to receive it in this case.

>  */s Michael G. Tanner*
> Michael G. Tanner